Kayla S. O'Connor (RI Bar No. 9491)
kconnor@odulawfirm.com
Olayiwola O. Oduyingbo (RI Bar No. 9427)
Odu@odulawfirm.com
**ODU LAW FIRM, LLC**
888 Reservoir Avenue, Floor 2
Cranston, RI 02910
Telephone:      (401) 209-2029
Facsimile:      (401) 217-2299

*Attorneys for Plaintiff*
*Johan Tejada Salvador*

# UNITED STATES DISTRICT COURT

## DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JOHAN TEJADA SALVADOR, an individual,<br><br>Plaintiff,<br><br>v.<br><br>BRIEFCAM, INC., *alias*,<br><br>Defendant. | **COMPLAINT FOR:**<br><br>1. **Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*;**<br>2. **Violation of the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981;**<br>3. **Violation of the Rhode Island Fair Employment Practices Act, R.I. Gen. Laws § 28-5-1 *et seq.*;**<br>4. **Violation of the Rhode Island Civil Rights Act, R.I. Gen. Laws § 42-112-1 *et seq.*;**<br>5. **Violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*;**<br>6. **Violation of the Rhode Island Civil Rights of People with Disabilities Act, R.I. Gen. Laws § 42-87-1 *et seq.*; and**<br>7. **Violation of the Rhode Island Whistleblowers' Protection Act, R.I. Gen. Laws § 28-50-1 *et seq.***<br><br>**<u>DEMAND FOR JURY TRIAL</u>** |

**ODU LAW FIRM, LLC**
888 RESERVOIR AVENUE, FLOOR 2
CRANSTON, RI 02910
(401) 209-2029

## TABLE OF CONTENTS

**Page**

SUMMARY OF THE ACTION ........................................................................................1

PARTIES ........................................................................................................................1

JURISDICTION .............................................................................................................2

VENUE ...........................................................................................................................2

FACTUAL BACKGROUND AND GENERAL ALLEGATIONS.................................2

    BriefCam Hires a New Supervisor Who is Hostile to Johan's Race, Color,
        and Sexual Orientation.............................................................................3

    Shai Takes Credit for Johan's Work......................................................................4

    Shai's Treatment Toward Johan Worsens .............................................................5

    Brian is Promoted and Takes Credit for Johan's Work ........................................6

    Shai Plans a Business Trip to Meet with Johan's Customers Without Him.........7

    Johan Reported the Discrimination to Human Resources ....................................8

    The Investigation Supports Johan's Reports, yet Takes No Action ...................10

    Johan Exhausted His Administrative Remedies and Brings this Action............15

CLAIMS FOR RELIEF ................................................................................................15

PRAYER FOR RELIEF ...............................................................................................23

DEMAND FOR JURY TRIAL ....................................................................................24

**ODU LAW FIRM, LLC**
888 RESERVOIR AVENUE, FLOOR 2
CRANSTON, RI 02910
(401) 209-2029

**ODU LAW FIRM, LLC**
888 RESERVOIR AVENUE, FLOOR 2
CRANSTON, RI 02910
(401) 209-2029

## COMPLAINT

### SUMMARY OF THE ACTION

1. Plaintiff, JOHAN TEJADA SALVADOR ("Johan" or "Plaintiff"), brings this action against his now former employer, Defendant, BRIEFCAM, INC. ("Defendant" or "BriefCam"), to assert his rights and remedy grave and rampant discriminatory and retaliatory violations that the Defendant committed over the course of Plaintiff's employment.

2. Plaintiff hereby seeks compensatory and punitive damages, counsel fees and costs, and other equitable relief arising out of Defendant's violations of the Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*; the Civil Rights Act of 1866 ("Section 1981"), as amended, 42 U.S.C. § 1981; the Rhode Island Fair Employment Practices Act ("FEPA"), R.I. Gen. Laws § 28-5-1 *et seq.*; the Rhode Island Civil Rights Act ("RICRA"), R.I. Gen. Laws § 42-112-1 *et seq.*; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*; the Rhode Island Civil Rights of People with Disabilities Act ("RICRPDA"), R.I. Gen. Laws § 42-87-1 *et seq.*, and the Rhode Island Whistleblowers' Protection Act ("RIWPA"), R.I. Gen. Laws § 28-50-1 *et seq.*

3. Plaintiff hereby alleges as follows:

### PARTIES

4. Plaintiff is a citizen and resident of Providence, Rhode Island.

5. At all times relevant herein, Plaintiff was employed by Defendant in the State of Rhode Island.

6. Defendant, BriefCam, is a foreign corporation organized and incorporated under the laws of the state of Delaware, with its principal place of business listed as 5300 Meadows Ste 400, Lake Oswego, OR 97035.

7. At all times relevant hereto, Plaintiff worked predominantly from home, in Rhode Island, with the exception of business trips.

8. At all times relevant hereto, Defendant was Plaintiff's "employer" within the meaning of all relevant statutes.

**JURISDICTION**

9.    The United States District Court for the District of Rhode Island has federal subject matter jurisdiction over this action under 28 U.S.C. § 1331 because Plaintiff asserts claims arising under federal law.  Specifically, this action arises, *inter alia*, under Title VII of the Civil Rights Act of 1964, 42 U.S.C § 2000e *et seq*.; the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981; the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*.

10.    The United States District Court for the District of Rhode Island has supplemental jurisdiction under 28 U.S.C. § 1367 for the state law claims set forth herein, each of which arises out of the same common nucleus of operative facts as the aforementioned federal claims over which the Court has original jurisdiction.

11.    The United States District Court for the District of Rhode Island has personal jurisdiction over Defendant because Plaintiff worked for Defendant in the District of Rhode Island and Defendant has sufficient minimum contacts in Rhode Island to render the exercise of jurisdiction by this Court both proper and necessary.

**VENUE**

12.    Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the acts and/or omissions giving rise to the claims asserted herein occurred in this District.

**FACTUAL BACKGROUND AND GENERAL ALLEGATIONS**

13.    Johan is a Black, gay man of Hispanic descent.

14.    Johan was born in the Dominican Republic.

15.    Johan was hired by Defendant on May 15, 2017, as an Inside Sales Manager.

16.    Subsequent to his hiring, Johan was promoted to Global Sales Operation Manager and then Customer Success Manager.

17.    Johan served as Customer Success manager until his termination.

18.    Defendant terminated Johan's employment on April 12, 2024.

19.    Johan was a high-performing employee throughout his almost seven years with BriefCam.

COMPLAINT

**ODU LAW FIRM, LLC**
888 RESERVOIR AVENUE, FLOOR 2
CRANSTON, RI 02910
(401) 209-2029

20.    Throughout Johan's employment with BriefCam, he had various managers from different cultural backgrounds.

**BriefCam Hires a New Supervisor Who is Hostile to Johan's Race, Color, and Sexual Orientation**

21.    On or about September 1, 2022, Shai Rybak ("Shai") joined BriefCam as the Vice President of Customer Success. Shai became Johan's direct supervisor.

22.    Shai came to BriefCam from a different industry.

23.    Johan spent many hours providing Shai with the training and knowledge necessary for Shai's new role, including training on the "Customer Care Program" that Johan created with the help of his former manager.

24.    At the time of Shai's hire, there were only two Black employees at BriefCam: (1) Johan and (2) Nate Wallace ("Nate"), a project engineer.

25.    From the outset of Shai's employment with BriefCam, Shai demonstrated hostility toward both Nate and Johan.

26.    Shai would ask other white coworkers whether Nate was "actually" doing work or if he was "being lazy."

27.    About a month after starting, Shai terminated Nate without any known reason.

28.    Nate's sudden and seemingly unprovoked termination made Johan fear for his job.

29.    Upon Nate's termination, Johan became the only Black individual at BriefCam.[1]

30.    On or about December 8, 2022, Johan attended an in-person meeting in New York City with the members of his team, including Shai and Brian Outley ("Brian").

31.    Brian was a Training Manager at the time and Johan's counterpart.

32.    Shai and Brian are both straight, white men.

33.    During the December 8, 2022 meeting, Johan tried to share notes and provide input based on his then five years of experience with BriefCam.

34.    Shai responded by yelling at Johan, telling him to "shut up" several times, and otherwise talking down to him.

---

[1] Johan was also one of two Hispanic individuals on his team.

ODU LAW FIRM, LLC
888 RESERVOIR AVENUE, FLOOR 2
CRANSTON, RI 02910
(401) 209-2029

ODU LAW FIRM, LLC
888 RESERVOIR AVENUE, FLOOR 2
CRANSTON, RI 02910
(401) 209-2029

35.     Shai did not speak to Brian in such a manner.

36.     During the lunch break, Shai was asking Brian and Johan about their personal lives and families.

37.     Brian replied that he had a wife and children, a fact that he and Shai had in common.

38.     When Johan was asked about his marital status, he shared that he is gay and was uncertain if he would get married.

39.     Shai then asked if Johan wanted children.

40.     Johan responded yes.

41.     Shai then stated that he believed two men could not raise a child without a maternal figure and recommended that Johan not have children.

42.     Johan was hurt by this statement, and stayed quiet for the rest of the day so as to not get into trouble with his new supervisor.

43.     Johan was the only openly gay employee at BriefCam.

44.     As a result of Shai's comments regarding Johan's sexual orientation and his actions towards the only other Black employee at BriefCam, Johan was on edge.

45.     Johan did not feel as if he could be himself.

46.     Indeed, Johan was subjected to heightened scrutiny that the white and/or straight employees at BriefCam were not.

**Shai Takes Credit for Johan's Work**

47.     During a subsequent February 2023 Sales Kickoff Event, Shai unveiled a new program that borrowed its workflow and a majority of its programming from Johan's Customer Care Program, which Johan trained Shai on when Shai first started with BriefCam.

48.     During the Sales Kickoff Event, Shai claimed that the Program was his own creation, and he gave Johan zero recognition for his ideas and contributions. Shai only *privately* acknowledged, to Johan and Brian, that he used Johan's material.

49.     Several members of BriefCam's upper management attended the Event, and were made to believe that Shai was solely responsible for developing the Customer Care Program.

4                                                         COMPLAINT

50.    The implication of Shai's actions was that Johan was not good enough to have come up with the Program.

51.    Johan did not get the recognition he deserved because of his race, color, and/or sexual orientation.

**Shai's Treatment Toward Johan Worsens**

52.    From December 2022 through the Winter of 2023, Shai continued to make passive aggressive comments toward Johan.

53.    Shai did not act this way towards any of Johan's white and/or straight team members.

54.    On or about February 17, 2023, Johan joined a Zoom call with several BriefCam colleagues—including Shai and Brian—to provide feedback on how the Product Team was managing the release of a new version of a product.

55.    When Johan tried to explain the Product Team's points to Shai, Shai yelled at him and abruptly ended the Zoom meeting after Johan spoke.

56.    Shai did not raise his voice at any of the white or straight members of the team.

57.    On Thursday, March 2, 2023, Shai called Johan to ask him to conduct an eight hour, in-person training for the City of Savannah on Monday, March 6, 2023.

58.    The City of Savannah was one of BriefCam's clients and had purchased a training session for over 20 participants that Brian was responsible for delivering.

59.    Brian initially met with the City and confirmed that he would lead the training.

60.    Johan was therefore surprised that he was being asked to conduct the training at the last minute instead of Brian.

61.    Johan told Shai that he was not comfortable with conducting the training because he is not a Trainer and did not have experience leading in-person training.

62.    Additionally, the City of Savannah was not one of Johan's clients nor within his region.

63.    Shai told Johan that something came up for Brian and that Johan had no choice but to conduct the in-person training on Monday.

64.    Johan had to book a flight and spend his entire weekend preparing for the training.

65.    Johan struggled to make these arrangements on such short notice, including emergency care for his dog, but he made it to Savannah and conducted Monday's in-person training as requested.

66.    After the training, Johan checked in with Brian.

67.    Brian confirmed that he was okay, but shared with Johan that he had asked not to lead the training because he felt overwhelmed by his responsibilities.

68.    Johan was thereby subjected to unnecessary stress by being forced to do something that was not part of his job, that he was not trained to do, and with only a few days' notice.

69.    Later, Johan learned that Brian was provided with one week of paid leave for his mental health.

70.    On or about March 7 or 8, 2023, Johan expressed concern regarding the Savannah training and Shai's disparate treatment towards him to BriefCam's Human Resources Manager, Danielle Clark Cole ("Danielle").

71.    Johan's concerns went unrecognized and unresolved.

**Brian is Promoted and Takes Credit for Johan's Work**

72.    In early 2023, Brian was promoted to Customer Success Manager.

73.    Brian was now responsible for managing and processing service contract renewal orders, which had been Johan's responsibility for the five to six months prior to Brian's promotion.

74.    When the renewal orders that Johan had worked on were delivered, Shai instructed Johan to give them to Brian so that Brian could take credit for the orders.

75.    Brian was credited and paid commission for the orders even though Johan worked on them for months.

76.    In fact, Johan worked on nearly 95-percent of the orders processed that quarter, almost to full completion, but received no credit or payment.

77.    Defendant pays commissions based on sales, so Brian not only got credit for Johan's work but was also given compensation for Johan's work—at Johan's expense.

ODU LAW FIRM, LLC
888 RESERVOIR AVENUE, FLOOR 2
CRANSTON, RI 02910
(401) 209-2029

6                                        COMPLAINT

78.    During a team call, Shai shared the quarterly results and highlighted Brian's success without mentioning Johan or his role.

79.    Another team member on the call knew the truth about Johan's contributions and thanked Johan for his hard work during the meeting.

80.    However, Johan's efforts remained largely unacknowledged and unappreciated.

81.    By giving Brian sole credit for the orders that Johan worked on, Brian and Shai were able to advance.

82.    It appeared as if Brian was able to complete five to six months of work in less than one month, and Shai appeared as if he made a great managerial decision by promoting Brian.

83.    Brian and Shai's advancement came at Johan's expense.

84.    For a second time, Johan's work was attributed to a white, straight man at BriefCam.

85.    After being subject to derogatory comments, forced to take on extraneous and stressful work, and having his work attributed to white, straight men on two occasions, Johan felt increasingly anxious about his job security and professional reputation.

86.    Johan was singled out and mistreated, and felt depressed and emotionally broken as a result.

**Shai Plans a Business Trip to Meet with Johan's Customers Without Him**

87.    On or about May 4, 2023, Johan was accidentally copied on an email detailing travel plans for a business trip to California, which was within Johan's assigned sales region.

88.    Shai planned this trip to meet with customers, including Johan's customers, without mentioning it to him.

89.    By the time Johan found out about the trip, it had been planned for months.

90.    Shai invited Brian on this trip instead of Johan, even though California was within Johan's region and Brian's region was Kansas.

91.    After Johan was accidentally copied on the May 4, 2023 email, Shai called Johan and filled him in on the plans.

92.    Johan received a four-day notice for the trip.

ODU LAW FIRM, LLC
888 RESERVOIR AVENUE, FLOOR 2
CRANSTON, RI 02910
(401) 209-2029

7                                    COMPLAINT

93. At this time, Johan told Shai that he felt he was being treated differently than other members of the team.

94. Shai asked Johan if he wanted to travel to California and join a speaking arrangement for the company.

95. Regrettably, Johan could not attend because he already had a commitment that week and could not make the arrangements with only a few days' notice.

96. Had Johan been informed earlier, when the plans were being made, he would have been able to attend.

97. Shai knew it was short notice and only invited Johan to avoid accusations of disparate treatment.

98. Brian received preferential treatment which was obvious to Johan and their colleagues.

99. Brian received preferential treatment because he is a white, straight man.

**Johan Reported the Discrimination to Human Resources**

100. After months of being discriminated against and professionally undermined, Johan went back to BriefCam's Human Resources Manager, Danielle, and reported that he was being discriminated against and harassed because of his race and sexual orientation.

101. Danielle asked if Johan would be comfortable speaking with Shai about the reported discrimination and mistreatment.

102. Johan responded that he was not comfortable talking with Shai and felt that Shai would not admit to the discrimination.

103. Johan also told Danielle that he was struggling mentally and emotionally, and had developed anxiety because of the discriminatory treatment to which he was repeatedly subjected.

104. Indeed, at this time, Johan was suicidal and made to feel as though he was worthless.

105. Johan became a shadow of himself due to the continuing discrimination he faced at work.

COMPLAINT

106. For example, Johan stopped speaking up at meetings, when he would ordinarily partake in discussions and encourage collaboration and input from his colleagues.

107. Johan asked Danielle to take time off for his mental health.

108. Danielle did not entertain Johan's request for medical leave, nor did she provide Johan with any other accommodation, despite Johan confiding in her that he was struggling mentally and emotionally.

109. In direct contrast, Brian was afforded a week of **paid** leave regarding his mental health.

110. Danielle did **not** alert Johan of his right to take leave pursuant to the Family and Medical Leave Act or the Rhode Island Parental and Family Medical Leave Act.

111. Had Daneille informed Johan of his right to leave, Johan would have availed himself of such.

112. Johan did not take any medical leave despite how much he was struggling, because no leave options or guidance were provided to him by Danielle or anyone else at BriefCam.

113. Johan also asked Danielle if she could contact other team members who witnessed Shai mistreating him.

114. Danielle did not contact other team members as requested, and instead informed Shai directly about Johan's complaints against him.

115. Shai called Johan soon after Johan's meeting with Danielle.

116. During that call, Shai attempted to assert power over Johan and scare him from making further complaints or reports. Shai confronted Johan about his reports to HR, yelling at him and causing Johan to cry.

117. Even though Johan was becoming increasingly and obviously upset, Shai continued to raise his voice at Johan and commanded him to never go to HR again.

118. Johan mentioned that there are employment laws that protect him as an employee in the United States, but Shai disregarded this and continued to yell at Johan, stating that what Johan was going through was ridiculous.

ODU LAW FIRM, LLC
888 RESERVOIR AVENUE, FLOOR 2
CRANSTON, RI 02910
(401) 209-2029

9                    COMPLAINT

ODU LAW FIRM, LLC
888 RESERVOIR AVENUE, FLOOR 2
CRANSTON, RI 02910
(401) 209-2029

119. Johan let Shai finish the call, and was left feeling defeated—and in some respects, punished—for simply reporting to Human Resources what was done to him.

120. After Johan's meeting with Danielle and the subsequent call from Shai, Human Resources confirmed that BriefCam would investigate Johan's claims of harassment and discrimination.

121. BriefCam did subsequently conduct *some* investigation into Johan's claims, but this investigation was not thorough or adequate as further detailed below.

**The Investigation Supports Johan's Reports, yet Takes No Action**

122. Danielle created an "Investigation Summary Report" based upon Johan's reports. *See* Exhibit 1.

123. This "Investigation Summary Report" memorializes Johan's statement to Danielle that "Shai Rybak was discriminating against him because he (Johan) is Black and gay." *Id.*

124. Said Report also confirms that Johan specifically told Danielle he was being "treated differently" than Brian. *Id.*

125. Three examples were notably investigated regarding Johan's reports of discrimination: (1) Shai informed direct reports other than Johan when Shai was traveling to Johan's customers; (2) Shai invited another direct report, other than Johan, to attend client meetings; (3) Johan had not been credited for his role in the Customer Success Program and that Shai credited himself for this.

126. Regarding these three allegations, Danielle's investigation reportedly confirmed that each example was **true**, yet she and BriefCam dismissed the decisions as not being discriminatory.

127. Yet, in conducting her investigation, Danielle **only spoke with Shai and Brian.**

128. In speaking with Shai, Danielle reportedly confirmed that Shai did not share information regarding his customer visits and that Shai invited Brian to the client meetings. Additionally, Shai "understood Johan's frustrations about the narrative that the Customer Success program was non-existent prior to Shai's arrival at the Company." *Id.*

ODU LAW FIRM, LLC
888 RESERVOIR AVENUE, FLOOR 2
CRANSTON, RI 02910
(401) 209-2029

129. In speaking with Brian, Danielle reportedly asked him to share any examples of how Shai treated him and Johan differently. Brian confirmed that Shai planned to visit customers and did not invite Johan. "Brian also referred to the current environment on the Customer Success team as a 'toxic environment.'" *Id.*

130. In addition to his reports of discrimination and disparate treatment, Danielle's Johan also reported to Danielle that "Shai encouraged Johan not to involve HR but rather to deal with any challenges or frustrations directly with him[,]" and that "[t]his made Johan uncomfortable, Johan felt that Shai was telling him that he cannot go to HR." *Id.*

131. Danielle's Investigation Summary Report also memorialized that Johan told Danielle he has "anxiety" and "is struggling with his mental health and thought about taking a leave of absence from BriefCam to manage his health." *Id.*

132. The investigation provided "recommended actions for BriefCam to take" which in part included that "Danielle will invite Shai to the next anti-harassment, anti-discrimination training, along with all managers that oversee US employees." *Id.*

133. There is a section titled "Actual actions taken by employer" which is blank. *Id.*

134. On May 24, 2023, Danielle informed Johan that Human Resources determined that Shai did no wrong and he did not have discriminatory intentions.

135. Johan repeated that he felt discriminated against, but Daneille told Johan that if he wanted to keep his job, he had to "deal with things"—making it clear that enduring the offensive and disparate treatment was a condition of Johan's continued employment with BriefCam.

136. On May 25, 2023, Johan met with Shai.

137. Shai stated that he wanted to "move ahead" in a better direction, as though nothing had happened.

138. For the sake of keeping his job, and in accordance with Danielle's directive, Johan agreed to move on.

139. However, dropping the complaint made Johan feel as though no one took his experience of discrimination seriously, and he settled into a state of numbness.

ODU LAW FIRM, LLC
888 RESERVOIR AVENUE, FLOOR 2
CRANSTON, RI 02910
(401) 209-2029

140. On June 8, 2023, the Director of Human Resources, Michal Ramot ("Michal"), scheduled a meeting between Shai and Johan to formally close the investigation.

141. However, on this day, Johan was traveling to California on a work assignment and had to decline the meeting.

142. On June 22, 2023, Michal emailed Johan and Shai stating it was her understanding that the "situation" had been resolved, and therefore, she would not reschedule the meeting.

143. Johan was shocked and asked Michal to schedule a meeting for the following week with Shai.

144. On July 6, 2023, Shai, Michal, and Johan meet to discuss Johan's complaints of discrimination.

145. Michal began the meeting with comments that made it seem as though everything was resolved.

146. Johan clarified that this was not the case, and explained that he was being treated differently than his coworkers and nothing was being done to address or change it.

147. At that point in the meeting, Shai interrupted and told Johan that he should not pay attention to how other team members were treated and that he should not be "jealous" of others' accomplishments.

148. Johan was ultimately told to ignore the fact that he was being discriminated against for being the only Black and openly gay team member.

149. On July 13, 2023, Shai sent an email recapping the meeting, wherein he misrepresented that Johan's complaints against him had been effectively resolved. *See* Exhibit 2.

150. Johan responded to Shai's e-mail and emphasized key issues that were not being adequately addressed, also stating: "I feel many of the issues remain to be resolved, and resolution remains in the future as we work together." *Id.*

151. However, even after the July 6, 2023 meeting, Shai continued to yell at Johan. Shai also continued to give preferential treatment to other employees.

152. In or around mid-November of 2023, Johan met with Danielle again to discuss Shai's discrimination and harassment.

COMPLAINT

153.    On November 26, 2023, after a particularly stressful week, Johan sent an email to Danielle informing her that the harassment continued.  *See* Exhibit 3.

154.    In this e-mail, Johan stated that he did not feel comfortable speaking with Shai, and also explicitly expressed concerns of retaliation. *Id.*

155.    Johan also reported to Danielle that Shai had given him a directive to make a report regarding revenue and to include terms in the report that would skew the revenue such that it looked higher than it was in reality.

156.    When Johan asked Shai about this, Shai got very upset and yelled at Johan: "how dare you question me!" Johan was fearful that if he were to generate the report as Shai instructed, that he would get in trouble.

157.    Johan was very fearful of retaliation, as the environment continued to worsen.

158.    In a private meeting prior to Johan's November 26, 2023 e-mail to Danielle, Shai had told Johan **not** to go to Human Resources if he had issues, so Johan feared for his job when he sent this email, but the discrimination was taking a toll on his mental health to the point that it became too much to handle.

159.    Danielle responded to Johan's November 26, 2023 email in defense of Shai, stating that if something needed to be changed, it would not concern Shai, suggesting that Johan was the one who needed to be removed from the situation and BriefCam. Danielle also offered to help Johan navigate the job market and review his resume, despite Johan not expressing an interest in leaving BriefCam.

160.    It was clear to Johan at this point that BriefCam was unwilling to do anything to address the discrimination that Shai had repeatedly subjected him to, and that the only way Johan would not be subjected to further discrimination was to leave BriefCam.

161.    In or around January of 2024, Johan went back to Danielle to inform her that the discrimination and harassment remained unchanged, and that he wanted to take her up on her previous offer to review Johan's resume based on her previous representations that Johan's only option to avoid further discrimination would be to leave BriefCam.

ODU LAW FIRM, LLC
888 RESERVOIR AVENUE, FLOOR 2
CRANSTON, RI 02910
(401) 209-2029

13                                                    COMPLAINT

ODU LAW FIRM, LLC
888 RESERVOIR AVENUE, FLOOR 2
CRANSTON, RI 02910
(401) 209-2029

162. On January 24, 2024, following Danielle's instruction that Johan remove himself from the situation, Johan shared with Danielle on a Teams call that he would begin looking for another job outside of BriefCam.

163. Johan was clear during the January 24, 2024 Teams call with Danielle that he was not resigning, and that he would begin looking for another job only because Danielle had told him to do so.

164. Danielle shared this with Shai, and one day later, January 25, 2024, Shai called Johan and confirmed that he received news that Johan was seeking new employment.

165. Shai asked Johan how long it would take for him to find a new job, and he responded that it could be until June of 2024.

166. From late January 2024 to February 13, 2024, Johan went on a planned vacation.

167. When he returned from vacation, Johan noticed Danielle had added a meeting to his calendar.

168. Johan attended the meeting and during this meeting was told that his last day would be March 30, 2024.

169. Johan was not offered any information regarding what would happen to his benefits, nor was he offered a severance package.

170. After the meeting, on February 15, 2024, Johan emailed Danielle reiterating that when he spoke with her on January 24, 2024, he was not resigning. *See* Exhibit 4.

171. In this e-mail, Johan stated that he was shocked to learn he was being terminated. *Id.*

172. Johan did not want to leave his employment with BriefCam, but he was forced to.

173. Johan's termination date was eventually extended to April 12, 2024.

174. On April 12, 2024, Johan was involuntarily terminated from his employment.

175. Human Resources did not contact Johan to complete an exit interview, despite exit interviews being customary at BriefCam.

176. In fact, others who were involuntarily terminated even received an exit interview.

COMPLAINT

177. Defendant treated Johan differently than his white, straight peers up until his last day.

178. Throughout Johan's almost seven years working for BriefCam, he was never issued a corrective action or discipline.

179. Johan received consistent praise for his work and was consistently promoted.

**Johan Exhausted His Administrative Remedies and Brings this Action**

180. On or about December 9, 2024, Johan co-filed a Charge of Discrimination with the Rhode Island Commission for Human Rights ("RICHR") and the United States Equal Employment Opportunity Commission ("EEOC"). Thereafter, Johan requested the Right to Sue from RICHR and the EEOC.

181. On July 18, 2025, RICHR issued Johan the Right to Sue.

182. On August 21, 2025, the EEOC issued Johan the Right to Sue.

183. Johan has therefore timely and properly exhausted administrative remedies and satisfied all pre-conditions of filing this action.

**CLAIMS FOR RELIEF**

184. Plaintiff realleges and incorporates therein by reference paragraphs 1 through the immediately preceding paragraph, inclusive, as if fully set forth herein.

**First Claim for Relief**
*Race and Color Discrimination in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.*

185. Defendant, by its individual and/or concerted acts and/or omissions, including, but not limited to those described herein, discriminated against Plaintiff on the basis of his race and color. For a time, Johan was one of two Black employees at BriefCam. However, Shai fired the other Black employee soon after his arrival. Johan was subjected to disparate treatment compared to his white coworkers. Johan's manager, Shai, repeatedly yelled at him, excluded him from a relevant business trip, and gave preferential treatment to Johan's straight, white counterpart, Brian. Moreover, on two occasions Johan was not credited for his work and a straight, white employee of BriefCam took credit for his work, allowing them to advance in their career and earn

commissions, at Johan's expense. Defendant also terminated Johan's employment. Defendant subjected Johan to disparate treatment because of his race and color in violation of Title VII and thereby deprived Johan of his rights secured under this Act, causing him to suffer damages as aforesaid.

**Second Claim for Relief**
*Race and Color Discrimination in Violation of the Civil Rights Act of 1866,*
*42 U.S.C. § 1981*

186.    Defendant, by its individual and/or concerted acts and/or omissions, including, but not limited to those described herein, engaged in unlawful discrimination, and denied Johan the equal right to make and enforce an employment contract because of his race, in violation of Section 1981. Defendant thereby deprived Johan of his rights secured under Section 1981, causing Johan to suffer damages as aforesaid.

**Third Claim for Relief**
*Race and Color Discrimination in Violation of the Rhode Island Fair Employment Practices Act,*
*R.I. Gen. Laws § 28-5-1 et seq.*

187.    Defendant, by its individual and/or concerted acts and/or omissions, including, but not limited to those described herein, discriminated against Plaintiff on the basis of his race and color. For a time, Johan was one of two Black employees at BriefCam. However, Shai fired the other Black employee soon after his arrival. Johan was subjected to disparate treatment compared to his white coworkers. Johan's manager, Shai, repeatedly yelled at him, excluded him from a relevant business trip, and gave preferential treatment to Johan's straight, white counterpart, Brian. Moreover, on two occasions Johan was not credited for his work and a straight, white employee of BriefCam took credit for his work, allowing them to advance in their career and earn commissions, at Johan's expense. Defendant also terminated Johan's employment. Defendant subjected Johan to disparate treatment because of his race and color in violation of FEPA and thereby deprived Johan of his rights secured under this Act, causing him to suffer damages as aforesaid.

ODU LAW FIRM, LLC
888 RESERVOIR AVENUE, FLOOR 2
CRANSTON, RI 02910
(401) 209-2029

**Fourth Claim for Relief**

*Race and Color Discrimination in Violation of the Rhode Island Civil Rights Act,*
*R.I. Gen. Laws § 42-112-1 et seq.*

188.    Defendant, by its individual and/or concerted acts and/or omissions, including, but not limited to those described herein, discriminated against Plaintiff on the basis of his race and color. For a time, Johan was one of two Black employees at BriefCam. However, Shai fired the other Black employee soon after his arrival. Johan was subjected to disparate treatment compared to his white coworkers. Johan's manager, Shai, repeatedly yelled at him, excluded him from a relevant business trip, and gave preferential treatment to Johan's straight, white counterpart, Brian. Moreover, on two occasions Johan was not credited for his work and a straight, white employee of BriefCam took credit for his work, allowing them to advance in their career and earn commissions, at Johan's expense. Defendant also terminated Johan's employment. Defendant subjected Johan to disparate treatment because of his race and color in violation of RICRA and thereby deprived Johan of his rights secured under this Act, causing him to suffer damages as aforesaid.

**Fifth Claim for Relief**

*Sex Discrimination in Violation of the Title VII of the Civil Rights Act of 1964,*
*42 U.S.C. § 2000e et seq.*

189.    Defendant, by its individual and/or concerted acts and/or omissions, including, but not limited to those described herein, discriminated against Plaintiff on the basis of his sexual orientation. Johan was the only openly gay employee at BriefCam. Johan's manager, Shai, made comments directly related to his sexual orientation and mocked his desire to have children. Shai yelled at Johan and excluded him from a relevant business trip. Shai gave preferential treatment to Johan's straight, white counterpart, Brian. Moreover, on two occasions Johan was not credited for his work and a straight, white employee of BriefCam took credit for his work, allowing them to advance in their career and earn commissions, at Johan's expense. Defendant also terminated Johan's employment. Defendant subjected Johan to disparate treatment because of his sexual orientation in violation of Title VII and thereby deprived Johan of his rights secured under this Act, causing him to suffer damages as aforesaid.

ODU LAW FIRM, LLC
888 RESERVOIR AVENUE, FLOOR 2
CRANSTON, RI 02910
(401) 209-2029

COMPLAINT

ODU LAW FIRM, LLC
888 RESERVOIR AVENUE, FLOOR 2
CRANSTON, RI 02910
(401) 209-2029

### Sixth Claim for Relief
*Sex Discrimination in Violation of the Rhode Island Fair Employment Practices Act, R.I. Gen. Laws § 28-5-1 et seq.*

190.    Defendant, by its individual and/or concerted acts and/or omissions, including, but not limited to those described herein, discriminated against Plaintiff on the basis of his sexual orientation. Johan was the only openly gay employee at BriefCam. Johan's manager, Shai, made comments directly related to his sexual orientation and desire to have children. Shai yelled at Johan and excluded him from a relevant business trip. Shai gave preferential treatment to Johan's straight, white counterpart, Brian. Moreover, on two occasions Johan was not credited for his work and a straight, white employee of BriefCam took credit for his work, allowing them to advance in their career and earn commissions, at Johan's expense. Defendant also terminated Johan's employment. Defendant subjected Johan to disparate treatment because of his sexual orientation in violation of FEPA and thereby deprived Johan of his rights secured under this Act, causing him to suffer damages as aforesaid.

### Seventh Claim for Relief
*Sex Discrimination in Violation of the Rhode Island Civil Rights Act, R.I. Gen. Laws § 42-112-1 et seq.*

191.    Defendant, by its individual and/or concerted acts and/or omissions, including, but not limited to those described herein, discriminated against Plaintiff on the basis of his sexual orientation. Johan was the only openly gay employee at BriefCam. Johan's manager, Shai, made comments directly related to his sexual orientation and mocked his desire to have children. Shai yelled at Johan and excluded him from a relevant business trip. Shai gave preferential treatment to Johan's straight, white counterpart, Brian. Moreover, on two occasions Johan was not credited for his work and a straight, white employee of BriefCam took credit for his work, allowing them to advance in their career and earn commissions, at Johan's expense. Defendant also terminated Johan's employment. Defendant subjected Johan to disparate treatment because of his sexual orientation in violation of RICRA and thereby deprived Johan of his rights secured under this Act, causing him to suffer damages as aforesaid.

ODU LAW FIRM, LLC
888 RESERVOIR AVENUE, FLOOR 2
CRANSTON, RI 02910
(401) 209-2029

**Eighth Claim for Relief**
*Retaliation in Violation of the Title VII of the Civil Rights Act of 1964,*
*42 U.S.C. § 2000e et seq.*

192.    Defendant, by its individual and/or concerned acts and/or omissions, including, but not limited to those described herein, retaliated against Plaintiff for engaging in protected activity. Johan engaged in protected activity by reporting Shai for discrimination. Johan made such reports to Human Resources and thereafter was terminated. Danielle suggested that Johan seek other employment, instead of properly addressing his complaints of discrimination. Defendant's actions were in violation of Title VII and thereby deprived Johan of his rights secured under this Act, causing Johan to suffer damages as aforesaid.

**Ninth Claim for Relief**
*Retaliation in Violation of the Rhode Island Fair Employment Practices Act,*
*R.I. Gen. Laws § 28-5-1 et seq.*

193.    Defendant, by its individual and/or concerned acts and/or omissions, including, but not limited to those described herein, retaliated against Plaintiff for engaging in protected activity. Johan engaged in protected activity by reporting Shai for discrimination. Johan made such reports to Human Resources and thereafter was terminated. Danielle suggested that Johan seek other employment, instead of properly addressing his complaints of discrimination. Defendant's actions were in violation of FEPA and thereby deprived Johan of his rights secured under this Act, causing Johan to suffer damages as aforesaid.

**Tenth Claim for Relief**
*Disability Discrimination in Violation of the Americans with Disabilities Act,*
*42 U.S.C. §12101 et seq.*

194.    Defendant, by its individual and/or concerted acts and/or omissions, including, but not limited to those described herein, discriminated against Plaintiff because of his disability. Johan had anxiety. Johan shared with Danielle that he was suffering from anxiety and mental health concerns. Johan requested a reasonable accommodation in the form of medical leave. However, Danielle did not take Johan's mental health seriously and denied Johan's request for medical leave. Thereafter, Danielle suggested Johan resign and then terminated Johan's employment.

COMPLAINT

Defendant's actions were in violation of the ADA and thereby deprived Johan of his rights secured under this Act, causing Johan to suffer damages as aforesaid.

### Eleventh Claim for Relief
*Disability Discrimination in Violation of the Rhode Island Civil Rights of People with Disabilities Act,*
*R.I. Gen. Laws § 42-87-1 et seq.*

195.    Defendant, by its individual and/or concerted acts and/or omissions, including, but not limited to those described herein, discriminated against Plaintiff because of his disability. Johan had anxiety. Johan shared with Danielle that he was suffering from anxiety and mental health concerns. Johan requested a reasonable accommodation in the form of medical leave. However, Danielle did not take Johan's mental health seriously and denied Johan's request for medical leave. Thereafter, Danielle suggested Johan resign and then terminated Johan's employment. Defendant's actions were in violation of the RICRPDA and thereby deprived Johan of his rights secured under this Act, causing Johan to suffer damages as aforesaid.

### Twelfth Claim for Relief
*Disability Discrimination in Violation of the Rhode Island Civil Rights Act,*
*R.I. Gen. Laws § 42-112-1 et seq.*

196.    Defendant, by its individual and/or concerted acts and/or omissions, including, but not limited to those described herein, discriminated against Plaintiff because of his disability. Johan had anxiety. Johan shared with Danielle that he was suffering from anxiety and mental health concerns. Johan requested a reasonable accommodation in the form of medical leave. However, Danielle did not take Johan's mental health seriously and denied Johan's request for medical leave. Thereafter, Danielle suggested Johan resign and then terminated Johan's employment. Defendant's actions were in violation of the RICRA and thereby deprived Johan of his rights secured under this Act, causing Johan to suffer damages as aforesaid.

### Thirteenth Claim for Relief
*Disability Discrimination in Violation of the Rhode Fair Employment Practices Act,*
*R.I. Gen. Laws § 28-5-1 et seq.*

197.    Defendant, by its individual and/or concerted acts and/or omissions, including, but not limited to those described herein, discriminated against Plaintiff because of his disability.

ODU LAW FIRM, LLC
888 RESERVOIR AVENUE, FLOOR 2
CRANSTON, RI 02910
(401) 209-2029

COMPLAINT

Johan had anxiety. Johan shared with Danielle that he was suffering from anxiety and mental health concerns. Johan requested a reasonable accommodation in the form of medical leave. However, Danielle did not take Johan's mental health seriously and denied Johan's request for medical leave. Thereafter, Danielle suggested Johan resign and then terminated Johan's employment. Defendant's actions were in violation of the FEPA and thereby deprived Johan of his rights secured under this Act, causing Johan to suffer damages as aforesaid.

## Fourteenth Claim for Relief
### *Failure to Accommodate in Violation of the Americans with Disabilities Act, 42 U.S.C. §12101 et seq.*

198.    Defendant, by its individual and/or concerted acts and/or omissions, including, but not limited to those described herein, failed to accommodate Plaintiff's disability. Johan shared with Danielle that he was suffering from anxiety and mental health concerns. Johan requested a reasonable accommodation in the form of medical leave. However, Danielle did not take Johan's mental health seriously and denied Johan's request for medical leave. Defendant's actions were in violation of the ADA and thereby deprived Johan of his rights secured under this Act, causing Johan to suffer damages as aforesaid.

## Fifteenth Claim for Relief
### *Failure to Accommodate in Violation of the Rhode Island Civil Rights of People with Disabilities Act, R.I. Gen. Laws § 42-87-1 et seq.*

199.    Defendant, by its individual and/or concerted acts and/or omissions, including, but not limited to those described herein, failed to accommodate Plaintiff's disability. Johan shared with Danielle that he was suffering from anxiety and mental health concerns. Johan requested a reasonable accommodation in the form of medical leave. However, Danielle did not take Johan's mental health seriously and denied Johan's request for medical leave. Defendant's actions were in violation of the RICRPDA and thereby deprived Johan of his rights secured under this Act, causing Johan to suffer damages as aforesaid.

**Sixteenth Claim for Relief**
*Failure to Accommodate in Violation of the Rhode Island Civil Rights Act,*
*R.I. Gen. Laws § 42-112-1 et seq.*

200.    Defendant, by its individual and/or concerted acts and/or omissions, including, but not limited to those described herein, failed to accommodate Plaintiff's disability. Johan shared with Danielle that he was suffering from anxiety and mental health concerns. Johan requested a reasonable accommodation in the form of medical leave. However, Danielle did not take Johan's mental health seriously and denied Johan's request for medical leave. Defendant's actions were in violation of the RICRA and thereby deprived Johan of his rights secured under this Act, causing Johan to suffer damages as aforesaid.

**Seventeenth Claim for Relief**
*Failure to Accommodate in Violation of the Rhode Fair Employment Practices Act,*
*R.I. Gen. Laws § 28-5-1 et seq.*

201.    Defendant, by its individual and/or concerted acts and/or omissions, including, but not limited to those described herein, failed to accommodate Plaintiff's disability. Johan shared with Danielle that he was suffering from anxiety and mental health concerns. Johan requested a reasonable accommodation in the form of medical leave. However, Danielle did not take Johan's mental health seriously and denied Johan's request for medical leave. Defendant's actions were in violation of the FEPA and thereby deprived Johan of his rights secured under this Act, causing Johan to suffer damages as aforesaid.

**Eighteenth Claim for Relief**
*Failure to Engage in the Interactive Process in Violation of the Americans with Disabilities Act,*
*42 U.S.C. §12101 et seq.*

202.    Defendant, by its individual and/or concerted acts and/or omissions, including, but not limited to those described herein, failed to engage in the interactive process. Johan shared with Danielle that he was suffering from anxiety and mental health concerns. Johan requested a reasonable accommodation in the form of medical leave. However, Danielle did not entertain Johan's request or any discussion regarding accommodations, despite approving Brian for a one-week, paid, medical leave regarding his mental health. Defendant's actions were in violation of

ODU LAW FIRM, LLC
888 RESERVOIR AVENUE, FLOOR 2
CRANSTON, RI 02910
(401) 209-2029

ODU LAW FIRM, LLC
888 RESERVOIR AVENUE, FLOOR 2
CRANSTON, RI 02910
(401) 209-2029

the ADA and thereby deprived Johan of his rights secured under this Act, causing Johan to suffer damages as aforesaid.

### Nineteenth Claim for Relief
*Failure to Engage in the Interactive Process in Violation of the Rhode Island Civil Rights of People with Disabilities Act,*
*R.I. Gen. Laws § 42-87-1 et seq.*

203.    Defendant, by its individual and/or concerted acts and/or omissions, including, but not limited to those described herein, failed to engage in the interactive process. Johan shared with Danielle that he was suffering from anxiety and mental health concerns. Johan requested a reasonable accommodation in the form of medical leave. However, Danielle did not entertain Johan's request or any discussion regarding accommodations, despite approving Brian for a one-week, paid, medical leave regarding his mental health. Defendant's actions were in violation of the RICRPDA and thereby deprived Johan of his rights secured under this Act, causing Johan to suffer damages as aforesaid.

### Twentieth Claim for Relief
*Violation of the Rhode Island Whistleblowers' Protection Act,*
*R.I. Gen. Laws § 28-50-1 et seq.*

204.    Defendant, by its individual and/or concerted acts and/or omissions, including but not limited to those described herein, retaliated against Johan for reporting violations of law. Johan reported that he was being discriminated against because of his race and sexual orientation. Thereafter, Defendant terminated his employment. Defendant's actions were in violation of the RIWPA and thereby deprived Johan of his rights secured under this Act, causing Johan to suffer damages as aforesaid.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays and respectfully requests that this Court grant the following relief:

A. A declaratory judgment declaring that the acts and/or omissions of Defendant, including, but not limited to those complained of herein, are in violation of the Title VII, Section 1981, FEPA, RICRA, ADA, RICRPDA, RIWPA;

B. An injunction directing Defendant to take such affirmative action as is necessary to refrain from such conduct as is necessary to ensure that the effects of these unlawful employment practices are eliminated and not repeated;

C. An injunction or other equitable relief, including, but not limited to, an award of back pay, front pay or reinstatement, and other compensation and/or benefits, and to make Plaintiff whole for all earnings and benefits Plaintiff would have received but for the violations;

D. An award of all actual, general, special, incidental, statutory, punitive, compensatory, liquidated, consequential, and/or restitutionary damages to which Plaintiff is entitled;

E. An award of prejudgment interest, reasonable attorneys' fees, and costs; and

F. Such other and further relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all issues triable as of right.

Dated: October 14, 2025

**ODU LAW FIRM, LLC**

By:  /s/ *Kayla S. O'Connor*
    **Kayla S. O'Connor, Esq.**
    RI Bar No. 9491
    **Olayiwola O. Oduyingbo, Esq.**
    RI Bar No. 9427
    888 Reservoir Avenue, Floor 2
    Cranston, RI 02910
    Phone: (401) 209-2029
    Fax: (401) 217-2299
    koconnor@odulawfirm.com
    odu@odulawfirm.com

    **ATTORNEYS FOR PLAINTIFF, JOHAN TEJADA SALVADOR**

**ODU LAW FIRM, LLC**
888 RESERVOIR AVENUE, FLOOR 2
CRANSTON, RI 02910
(401) 209-2029